## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

ALBERTO HUGO MARTINEZ,

      Petitioner,

-vs-                                Case No.  8:10-CV-8-T-27EAJ

SECRETARY, DEPARTMENT
OF CORRECTIONS,

      Respondent.

_____/

## ORDER

Petitioner, an inmate in a Florida penal institution proceeding *pro se*, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 ("petition") challenging convictions for driving while license revoked, possession of a firearm by a convicted felon, carrying a concealed firearm, and resisting an officer without violence entered in 2005 by the Tenth Judicial Circuit Court, Polk County, Florida (Dkt. 1).  Respondent filed a response to the petition (Dkt. 9).  Petitioner filed a reply to the response (Dkt. 12).

Respondent asserts no challenge to the petition's timeliness.  The matter is now before the Court for consideration of Petitioner's claims.  An evidentiary hearing is not required for the disposition of this matter.  Rules Governing Section 2254 Cases, Rule 8(a) (2012).

## PROCEDURAL HISTORY

Following a jury trial on February 7, 2005, the jury found Petitioner guilty of driving while license revoked, possession of a firearm by a convicted felon, carrying a concealed firearm, and

resisting an officer without violence (Respondent's Appx. A, Ex. 1, Vol. I at 40-41). Petitioner was sentenced to 10 years in prison on the carrying a concealed firearm conviction, and 3 years in prison on both the driving while license revoked conviction and the possession of a firearm by a convicted felon conviction, with each sentence to run concurrently (Id. at 68-75).[1]  The appellate court affirmed Petitioner's convictions and sentences on March 10, 2006 (Id. at Ex. 2); *Martinez v. State*, 923 So. 2d 1172 (Fla. 2d DCA 2006) [table].

On October 30, 2006, Petitioner filed a Motion for Post Conviction Relief pursuant to Rule 3.850, Fla. R. Crim. P. ("Rule 3.850 motion") in which he raised 5 ineffective assistance of trial counsel claims (Respondent's Appx. B, Vol. I, Ex. 1).  On January 4, 2007, the post conviction court denied grounds 1 and 3, and ordered the State to respond to the remaining three grounds (Id. at Ex. 6).  The State filed a response (Id. at Ex. 7).   Petitioner filed a motion for reconsideration and to supplement ground 5 (Id. at Ex. 8).  On January 30, 2007, the post conviction court again denied grounds 1 and 3, and ordered the State to respond to grounds 2, 4, and amended ground 5 (Id. at Ex. 9).  The State filed a response (Id. at Ex. 10).  On November 3, 2008, an evidentiary hearing was held on grounds 2, 4, and amended ground 5 (Respondent's Appx. B, Vol. II, Ex. 12).  Following the evidentiary hearing, the post conviction court  denied the remaining three claims on December 11, 2008 (Id. at Ex. 2).  On December 9, 2009, the appellate court affirmed the denial of the Rule 3.850 motion (Id. at Ex. 4); *Martinez v. State*, 23 So. 3d 722 (Fla. 2d DCA 2009) [table].

Petitioner filed his § 2254 petition in this Court on December 23, 2009 (Dkt.  1).[2]  The

---

[1] Petitioner was sentenced to time served on the resisting an officer without violence conviction (Id. at 76).

[2] Although Petitioner's petition was received by this Court on January 4, 2010, Petitioner delivered his petition to prison officials for mailing on December 23, 2009 (Dkt. 1 at docket page 22). Under the mailbox rule set out in *Houston v. Lack*, 487 U.S. 266 (1988), a document is deemed filed by a *pro se* prisoner when it is delivered to prison authorities for forwarding to the court.

petition raises the following five ineffective assistance of trial counsel claims:

Ground One

Counsel provided ineffective assistance by failing to file a motion in limine to preclude mention of photograph, which was allegedly destroyed by police.

Ground Two

Counsel was ineffective for failing to inform defendant of the consequences of appearing before the jury in jail garb and its prejudicial effects.

Ground Three

Counsel provided ineffective assistance by failing to move for a judgment of acquittal as to carrying a concealed firearm on sufficiency of evidence grounds.

Ground Four

Counsel rendered ineffective assistance by failing to proffer supporting exculpatory evidence to buttress the misidentification defense.

Ground Five

Counsel failed to investigate and secure witness that could have established that Deputy Gaiser did not know whom [sic] was in the photographs and got his identification from secondhand sources, contrary to his testimony at trial.

## STANDARDS OF REVIEW

Under 28 U.S.C. § 2254(d) and (e) as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), this Court's review of the state court's factual findings is highly deferential. Those findings are presumed to be correct unless rebutted by clear and convincing evidence.  Similarly, the state courts' resolutions of issues of law-including constitutional issues-must be accepted unless they are found to be "contrary to" clearly established precedent of the Supreme Court of the United States or involved an "unreasonable application" of such precedent. *Williams v. Taylor*, 529 U.S. 362 (2000).  It is not enough that the federal courts believe that the state

court was wrong; it must be demonstrated that the state court decision was "objectively unreasonable." *Id. Breedlove v. Moore*, 279 F.3d 952 (11th Cir. 2002).

**Ineffective Assistance of Counsel**

To have a facially valid claim alleging ineffective assistance of counsel, Petitioner must meet the two-part test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland*'s two-part test requires Petitioner to demonstrate that counsel's performance was deficient and "there was a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. However, if a claim fails to satisfy the prejudice component, the court need not make a ruling on the performance component. *Id*. at 697.

"Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 130 S. Ct. 1473, 1485 (2010). "Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult." *Harrington v. Richter*, 131 S. Ct. 770, 788 (2011). As the *Richter* Court explained:

> The standards created by *Strickland* and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is "doubly" so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Id*. (citations omitted).

**Procedural Default**

A § 2254 application cannot be granted unless a petitioner "has exhausted the remedies available in the courts of the State; . . ." 28 U.S.C. 2254(b)(1)(A); *Snowden v. Singletary*, 135 F.3d 732, 735 (11th Cir. 1998). In other words, the state prisoner must give the state courts an opportunity

4

to act on his claims before he presents those claims to a federal court in a habeas petition. *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). *See also, Henderson v. Campbell*, 353 F.3d 880, 891 (11th Cir. 2003)("A state prisoner seeking federal habeas relief cannot raise a federal constitutional claim in federal court unless he first properly raised the issue in the state courts.") (quoting *Judd v. Haley*, 250 F.3d 1308, 1313 (11th Cir. 2001)); *Duncan v. Henry*, 513 U.S. 364 (1995) ("[E]xhaustion of state remedies requires that the state prisoner 'fairly present' federal claims to the state courts in order to give the State the 'opportunity to pass upon and correct alleged violations of its prisoners' federal rights[.]'") (citation omitted).

Under the procedural default doctrine, "if the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is applicable." *Smith v. Jones*, 256 F.3d 1135, 1138 (11th Cir. 2001). "The doctrine of procedural default was developed as a means of ensuring that federal habeas petitioners first seek relief in accordance with established state procedures." *Henderson*, 353 F.3d at 891 (quoting *Judd v. Haley*, 250 F.3d at 1313).

Pre-AEDPA decisions from the Supreme Court establish the framework governing procedural default in federal habeas cases. A procedural default will only be excused in two narrow circumstances. First, Petitioner may obtain federal habeas review of a procedurally defaulted claim if he shows both "cause" for the default and actual "prejudice" resulting from the default. "Cause" ordinarily requires Petitioner to demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in the state court. *Henderson*, 353 F.3d at 892; *Marek v. Singletary*, 62 F.3d 1295, 1302 (11th Cir. 1995).

To show "prejudice," Petitioner must show "not merely that the errors at his trial created a possibility of prejudice, but that they worked to his factual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Hollis v. Davis*, 941 F.2d 1471, 1480 (11th Cir. 1991) (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982)).  Petitioner must show that there is at least a reasonable probability that the result of the proceeding would have been different. *Henderson*, 353 F.3d at 892.

Second, Petitioner may obtain federal habeas review of a procedurally defaulted claim, without a showing of cause or prejudice, if review is necessary to correct a fundamental miscarriage of justice. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Henderson*, 353 F.3d at 892. This exception is only available "in an extraordinary case, where a constitutional violation has resulted in the conviction of someone who is actually innocent." *Henderson*, 353 F.3d at 892. The fundamental miscarriage of justice exception concerns a petitioner's "actual" innocence rather than his "legal" innocence. *Johnson v. Alabama*, 256 F.3d 1156, 1171 (11th Cir. 2001) (citing *Calderon v. Thompson*, 523 U.S. 538, 559 (1998)).  To meet this standard, a petitioner must "show that it is more likely than not that no reasonable juror would have convicted him" of the underlying offense. *Schlup v. Delo*, 513 U.S. 298, 327 (1995).  In addition, "'to be credible,' a claim of actual innocence must be based on [new] reliable evidence not presented at trial." *Calderon*, 523 U.S. at 559 (quoting *Schlup*, 513 U.S. at 324) (explaining "given the rarity of such evidence, in virtually every case, the allegation of actual innocence has been summarily rejected") (internal quotation marks omitted).

## DISCUSSION

### I. Exhaustion of Claims in State Court

Respondent argues that Grounds One, Three, Four, and Five of the petition are unexhausted

and procedurally defaulted because Petitioner did not brief these grounds in his post conviction appeal.  The Court disagrees.

Grounds One and Three were not waived by Petitioner's failure to raise them in his brief on collateral appeal.  Between December 2000 and October 2010, the Florida Second District Court of Appeal placed no obligation on post-conviction counsel to brief each claim summarily denied by the post-conviction court.[3]  *See Cunningham v. State*, 37 Fla. L. Weekly D 385 (Fla. 2nd DCA 2012). The claims Petitioner raised in Grounds One and Three in the instant petition were summarily denied by the state post conviction court (Respondent's Appx. B, Vol. I, Ex. 6).  Petitioner's failure to brief the summarily denied claims on appeal caused no procedural default because the claims were automatically reviewed by the appellate court under that court's internal procedures during that time. Therefore, the claims raised in Grounds One and Three are exhausted and not procedurally defaulted.

With regard to the claims raised in Grounds Four and Five, in Florida, in an appeal from the summary denial of a Rule 3.850 motion without an evidentiary hearing, no briefs or oral arguments are required. Fla.R.App.P. 9.141(b)(2)(C). Petitioner's post conviction appeal, however, followed an evidentiary hearing on the issues presented in Grounds Four and Five (see Respondent's Appx. B, Vol. II, Ex. 12).[4]  Therefore, Petitioner was required to brief these grounds. *See Atkins v. Singletary*, 965 F.2d 952, 955 (11th Cir. 1992); *Cortes v. Gladish*, 216 Fed.Appx. 897, 899-900 (11th Cir. 2007) (unpublished); Fla.R.App.P. 9.141(b)(3)(C); *Cunningham*, 37 Fla. L. Weekly D 385 (9.141(b)(3)(C) required briefing "for grounds that were denied after an evidentiary hearing.").  In

---

[3]Petitioner filed his brief in 2009 (Respondent's Appx. B, Ex. 13).

[4]The claim raised in Ground Two of the instant federal habeas petition was also considered during the evidentiary hearing (Id.).  Respondent, however, concedes that Ground Two is exhausted.

7

Florida, an appellant is considered to have abandoned claims which were not briefed with specific argument thereon. *Simmons v. State*, 934 So.2d 1100, 1111 n. 12 (Fla. 2006) (citing *Coolen v. State*, 696 So.2d 738, 742 n.2 (Fla. 1997)). Because Petitioner did not brief these grounds in his post conviction appeal,[5] he waived or abandoned them. Consequently, Petitioner's claims in Grounds Four and Five would ordinarily be considered unexhausted and procedurally defaulted.

Nevertheless, Petitioner argues in his reply that this Court should not consider Grounds Four and Five defaulted because he did everything he could to exhaust his federal claims in state court (Dkt. 12 at docket pages 2-5). Specifically, after his appointed post conviction appellate counsel filed the Initial Brief, which raised only one claim, Petitioner filed a *pro se* motion requesting the appellate court to either direct appellate counsel to file an amended initial brief raising all the grounds in his 3.850 motion that were denied following the evidentiary hearing, allow Petitioner to file a *pro se* supplemental initial brief, or to discharge counsel and allow him to proceed on appeal *pro se* (Id. at docket pages 12-15 [Exhibit A]). The appellate court denied Petitioner's *pro se* motion (Id. at docket page 17 [Exhibit B]). Petitioner then filed a Motion for Rehearing and Reconsideration in which he explained that the two claims that were denied following the evidentiary hearing and not raised in the Initial Brief, would be waived in state court and therefore procedurally barred in federal court (presumably in a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254) (Id. at docket pages 19-20). The Court takes judicial notice of information on the Florida Second District Court of Appeal's website, www.2dca.org/, viewed on January 15, 2013, which reveals that Petitioner's Motion for Rehearing and Reconsideration was denied on August 12, 2009. Fed.R.Evid. 201.

---

[5]See Respondent's Appx. B, Ex. 13.

In *Hitchcock v. Sec'y Dep't of Corr.*, 360 Fed. Appx. 82, 85-86 (2010) (unpublished opinion), the Eleventh Circuit Court of Appeals held that the Florida appellate court's denial of Hitchcock's *pro se* motion to file a *pro se* supplemental brief raising the Rule 3.850 motion claims not raised in the initial brief filed by counsel did not "rest on an adequate state rule of decision and that, therefore, Hitchcock's federal claims are not barred from our review." *Id*. at 88.[6] The Eleventh Circuit further held that Hitchcock's counsel's brief and Hitchcock's *pro se* motion to file a supplemental *pro se* brief satisfied the fair presentation requirement permitting review in federal court. *Id*. at 86. Finally, the Eleventh Circuit found that even if there was a Florida rule prohibiting *pro se* briefs by counseled petitioners, its application in Hitchcock's case "would be 'exorbitant. . . and pointlessly severe[,]'" because "Hitchcock did everything he could to exhaust his federal claims in the state courts" and "rejection of them [as defaulted from federal habeas review] would work an injustice." *Id*. at 87 (citations omitted).

*Hitchcock* is applicable to the instant case because the facts in *Hitchcock* are virtually identical to those in Petitioner's case. Like Hitchcock, Petitioner moved the appellate court to either allow him to file a *pro se* supplemental brief raising all the claims that were denied following the post conviction evidentiary hearing which appellate counsel failed to raise in the Initial Brief, or direct counsel to file a supplemental brief. Petitioner further moved, in the alternative, to dismiss counsel and proceed *pro se.* Both Hitchcock and Petitioner's motions were denied.

Like Hitchcock, Petitioner did everything he could to exhaust all of his federal claims in the state courts, but the appellate court rejected his efforts. Rejection of Petitioner's claims here as

---

[6]The Eleventh Circuit found that "[n]o [Florida] DCA had a rule prohibiting *pro se* briefs by counseled appellants at the time Hitchcock filed his motion." *Id*. at 87.

procedurally defaulted "would work an injustice." *Hitchcock*, 360 Fed. Appx. at 87.  Moreover, there is no rule barring *pro se* briefs in counseled appeals which is firmly established and regularly followed in the Florida district courts of appeal.  *Id*. at 85-87.   Consequently, the state appellate court's rejection of Petitioner's *pro se* efforts to exhaust the claims in Grounds Four and Five does not rest on an adequate and independent state-law ground that bars federal review of these claims.

Accordingly, Grounds One, Three, Four, and Five are not procedurally defaulted, and therefore they will be reviewed on the merits.

## II. Merits Review

### Ground One

Petitioner asserts that trial counsel was ineffective in failing to file a motion in limine to keep out the mention of a photograph used to identify Petitioner as the suspect in the case.  In support, Petitioner argues that because the photograph had been destroyed by law enforcement prior to Petitioner's trial, the mention of what the photograph contained constituted hearsay.

Petitioner raised this claim in Ground One of his Rule 3.850 motion (Respondent's Appx. B, Vol. I, Ex. 1).  In denying the claim, the post conviction court stated:

> In response to claim 1, that trial counsel was ineffective for failing to file a Motion in Limine to keep out the mention of a photograph used to identify the Defendant as the suspect in this case because the photograph amounted to hearsay, the Court finds Defendant is mistaken. First, although somewhat confusing in the Motion, the photograph that Defendant complains of was never introduced into evidence or even available at trial. See Tr. at 42, line 12, to 45, line 6; and 58, line 22, to 60, line 12, a copy of which is attached. Second, neither the actual photograph (had it been available and introduced) nor the mention of what the photo contained constituted hearsay evidence.  See Section 90.803, Fla. Statutes. Accordingly, because Defendant's basis for filing the Motion in Limine is without merit, the Motion would have likewise been without merit. As such, counsel cannot be deemed ineffective for failing to file a meritless motion. Based on the foregoing, **claim 1 is DENIED**.

(Respondent's Appx. B, Vol. I, Ex. 6 at 82) (emphasis in original).

In denying Petitioner's motion for reconsideration of the denial of the claim, the post conviction court stated:

> In his present Motion Defendant argues the Court erred in its summary denial of claims 1 and 3 and seeks the Court's reconsideration of same. After review of Defendant's original Motion, the Court's Order, and Defendant's present Motion and arguments contained therein, the Court finds as follows:

> First, the Court adopts and incorporates by reference herein its Order on Defendant's Motion for Post-Conviction Relief and Order to Show Cause, issued on January 4, 2007. Second, Defendant's first claim of error, as argued in both Motions, amounts to supposition built upon implication and speculation. In his original Motion and in support of claim 1, Defendant argued Deputy Gaiser, the arresting officer in this case, was allowed to testify about a photograph he located inside the Defendant's car after the Defendant exited same — even though the photo was later destroyed. Defendant then contends that the photo did not contain what Deputy Gaiser said it did or at least with a quality that was implied by Deputy Gaiser. See Motion for Post-Conviction Relief at 6 ("Significantly, the photo the State used to obtain its case showed a very obscured view of the Defendant from a side profile, almost to the point of the Defendant's back.") Defendant then alleges, "Had counsel argued to the Court, the fact that this entire case was based upon identification of the Defendant; that since said photo was suspiciously destroyed; the defense would suffer undue prejudice by the fact the jury could not view the photo (that only shows a partial "back" view of the Defendant); and prevented defense from pointing out who the other persons in the photo were[,] A reasonable likelihood exists that the trial court would have prevented mention of the photos, thus, supporting [the] defense that identification was unreliable." Motion for PostConviction Relief at 6-7; and Motion for Reconsideration at 3.

> To add to the above-listed examples of speculation on the part of the Defendant, in his Motion for Reconsideration Defendant advises"(The Defendant knew of this photo that his brother had in his possession, and the photo shows a very obscured view of the Defendant for the side/rear, virtually the Defendant's back.) This was considerable since the photo would have lead a reasonable person to conclude that Deputy Gaiser was being untruthful regarding his tentative identification of the Defendant via the photograph." Motion for Reconsideration at 2-3.

> In contrast to the above, however, the Defendant acknowledges that the photograph no longer exists. As such, there will never be a method by which the

Defendant can show that the photo he believes Deputy Gaiser used in this case was the same one Defendant "knew" was in his brother's possession. However, such is not the issue. Defendant implies in his Motions that his being identified as the suspect in this case was solely based upon this non-existent photograph. Such implication is belied by the facts. As testified to by Deputy Gaiser at trial, he used the photograph he found in the car to obtain a name. He then "looked up" the name (presumably in a Sheriff's Office database) and received a photograph of that person. Deputy Gaiser then compared the newly obtained photograph to both his memory of the individual he saw running from the car as well as the photograph he found in the car. See Tr. at 45, lines 5-6, a copy of which is attached to the Court's Order issued on January 4, 2007.

In response to Defendant's implication that defense counsel failed to argue or point out that the photograph in question was "suspiciously destroyed," the Court finds the record directly refutes such a contention. See Tr. at 68-69, 137, and 150-53, copies of which are attached hereto.

Lastly, in his original Motion, and again in support of his claim 1, Defendant makes the statement that, "The jury had many questions regarding Gaiser's testimony." Motion for PostConviction Relief at 6. After reviewing the entire record, the Court finds such a statement is completely without support.  Based upon all of the above, **claim 1 is again DENIED**.

(Respondent's Appx. B, Vol. I, Ex. 9 at 164-65) (emphasis in original).

The state post conviction court found that Deputy Gaiser's testimony regarding the photograph was not hearsay. Therefore, the post conviction court determined that a motion in limine to exclude mention of the photograph on hearsay grounds would have been denied. Consequently, the state post conviction court concluded that Petitioner failed to show deficient performance.

The state court has answered the question of what would have happened had defense counsel filed a motion in limine seeking to exclude mention of the photograph on the ground that it was hearsay - the motion would have been denied. Consequently, Petitioner has failed to establish

12

deficient performance.[7] *See e.g., Callahan v. Campbell*, 427 F.3d 897, 932 (11th Cir. 2005) (Alabama Court of Criminal Appeals had already answered the question of what would have happened had counsel objected to the introduction of petitioner's statements based on state decisions; the objection would have been overruled; therefore, counsel was not ineffective for failing to make that objection).

Moreover, Petitioner has failed to demonstrate prejudice because he has not shown that, had counsel filed the motion in limine, the motion would have been successful, nor that exclusion of Deputy Gaiser's testimony regarding the photograph found in the vehicle would have carried a reasonable probability of changing the outcome of the trial. Deputy Gaiser was able to identify Petitioner not only by the photograph found in the vehicle, but also because he saw Petitioner's face from a distance of only 20 feet (Respondent's Appx. A, Vol. II at record page 116). When Deputy Gaiser found Petitioner's photograph from searching law enforcement records on his computer, he was able to determine that Petitioner was the same person whom he had seen exiting the vehicle, and seen in the photograph he found in the vehicle (Id. at 123).

Petitioner has not shown that the state court's decision involved an unreasonable application of *Strickland* or was based on an unreasonable determination of the facts. Accordingly, Ground One does not warrant relief.

**Ground Two**

Petitioner complains that counsel was ineffective in failing to inform him of the prejudicial

---

[7]Federal courts "will grant [habeas] relief if. . .a state trial judge's erroneous admission of evidence makes a petitioner's trial 'so fundamentally unfair that the conviction was obtained in violation of the due process clause of the fourteenth amendment[.]'" *Herring v. Sec'y, Dep't of Corr.*, 397 F.3d 1338, 1355 n.8 (11th Cir. 2005) (quoting *Thigpen v. Thigpen*, 926 F.2d 1003, 1012 (11th Cir. 1991)). Petitioner has not alleged or established that the admission of the Deputy Gaiser's testimony regarding the photograph rendered the trial fundamentally unfair.

effects of wearing his prison uniform during the trial.  Petitioner further asserts that counsel never

informed him that he had the option to wear "dress clothes" during the trial.  Petitioner states that

had he known that he could not be compelled to wear his prison uniform during the trial, he would

have worn other clothes.

Petitioner raised this claim in Ground Two of his Rule 3.850 motion (Respondent's Appx.

B, Vol. I, Ex. 1 at record pages 72-73).  After the evidentiary hearing, the state post conviction court

denied the claim and stated:

> As to claim 2, the Court finds that the Defendant's testimony was not credible. The
> State provided the case of Estelle v. Williams, 425 U.S. 501, 96 S.Ct. 1691 (1976).
> In that case, the Court held that a defendant must object to being tried in jail clothes
> and may not remain silent and then later claim error. Estelle v. Williams, 425 U.S.
> 501; citing Hernandez v. Beta, 443 F.2d at 637. The Court must consider whether the
> Defendant was compelled, against his will, to be tried in jail clothes. Estelle v.
> Williams at 507. Trial counsel Cox testified that he brought clothes for the Defendant
> to wear to the courthouse on the day of trial. Defendant testified that the Court asked
> him if he wanted to change out of jail clothes prior to jury selection and the
> Defendant responded" I don't think it will be necessary." Defendant never expressed
> any desire to wear street clothes at trial and in fact, was going to tell the jury that he
> had been in jail since he was arrested. Defendant himself admitted that he was never
> compelled to wear jail clothes at trial. Based on the evidence presented, the
> Defendant cannot establish that he was compelled to wear jail attire and he has failed
> to meet either prong of *Strickland*, and **claim 2** is **DENIED**.

(Respondent's Appx. B, Vol. II, Ex. 12 at record pages 299-300) (emphasis in original).

The record refutes Petitioner's ineffective assistance of counsel claim.  The transcript of

Petitioner's trial reveals that prior to jury selection, the following exchange occurred between the

trial court, Petitioner, and defense counsel:

> THE COURT: Okay. The other thing is, and I don't think he probably
> inquired on this:
>
> Mr. Martinez, let me ask you, I see that you are in prison orange outfit. Do
> you want to change clothes and look -- have street clothes to the - in front of the jury?

14

THE DEFENDANT: I don't think it will be necessary, sir.

THE COURT: Okay.

MR. COX: Judge, I've talked to him about that. With the situation with my client, I have discussed it. I don't know that it's necessary to put him in street clothes. It's not something that I'm going to keep hidden from the jury. **I don't want it hidden from the jury that he's in jail on this issue**.

(Respondent's Appx. A, Vol. I, Ex. 1 at transcript page 6) (emphasis added).

The record clearly demonstrates that the trial court made Petitioner aware that he had the option to wear "street clothes" instead of his prison uniform during trial. Therefore, Petitioner's assertion that he would have worn "street clothes" instead of his prison uniform had he known that was an option available to him, is plainly belied by the record.

Insofar as Petitioner contends that counsel was ineffective in failing to advise him of the prejudicial effects of wearing his prison uniform during trial, Petitioner fails to demonstrate deficient performance. It is apparent from counsel's statements during the above referenced exchange that counsel discussed the issue with Petitioner. It is also apparent from the exchange that counsel made a tactical decision not to hide from the jury that Petitioner was in jail on the charges for which he was standing trial.[8]

Further, during closing argument counsel expressly made reference to Petitioner's prison uniform, stating in pertinent part:

When you walk back there to deliberate, you'll wonder, was it that person that was there, or was it somebody else?

And there is nothing to show that it's this person unless you believe Deputy

---

[8]Petitioner essentially concedes in his petition that the decision to wear the prison uniform was counsel's trial strategy, or at least that counsel informed the trial court that it was a strategic decision (see Dkt. 1 at record page 9) ("When the judge inquired about Defendant's jail garb, counsel explained that this was a strategic decision.").

Sheriff Gaiser, somebody who wants you to believe oh, yeah, I know who Manuel Martinez was when he didn't, somebody who could have taken that gun and properly handled it, called crime scene.

I know it's difficult. But if you're going to charge a man with a crime, then do it right.

Because this man's freedom has already been in jeopardy. **He's sitting here in jail orange**. This man's freedom -- so if you're going to do the case, do it right.

(Respondent's Appx. A, Vol. II at record page 216) (emphasis added). Therefore, counsel used the fact that Petitioner was wearing a prison uniform to emphasize that Petitioner's freedom had already been unjustly restricted by Deputy Gaiser, who had misidentified Petitioner as the perpetrator and mishandled the investigation.

"[S]trategic choices [by counsel] are virtually unchallengeable." *Provenzano v. Singletary*, 148 F.3d 1327, 1332 (11th Cir. 1998) (citations and internal quotation marks omitted). "In order to show that an attorney's strategic choice was unreasonable, a petitioner must establish that no competent counsel would have made such a choice." *Id*. Petitioner has failed to show that trial counsel's decision to allow Petitioner to wear prison garb during the trial was a course no competent counsel would have taken under the circumstances. *See, e.g., Estelle v. Williams*, 425 U.S. 501, 508 (1976) ("[I]t is not an uncommon defense tactic to produce the defendant in jail clothes in the hope of eliciting sympathy from the jury.") (citations omitted). Therefore, defense counsel's tactical decision to allow Petitioner to wear prison clothes during trial cannot be deemed unreasonable trial strategy.[9]

---

[9]The Court recognizes that during the evidentiary hearing, trial counsel testified that he did not recall whether Petitioner wearing a prison uniform was part of his trial strategy (Respondent's Appx. B, Vol. II, Ex. 12 at record page 247). Nevertheless, it is apparent from the trial transcript that counsel wanted Petitioner to wear the prison uniform in hopes of eliciting sympathy from the jury. During the evidentiary hearing, counsel recognized that Petitioner wearing a prison uniform during trial could have been helpful to the defense because it could have elicited sympathy from the jury (Id. at record pages 255-56).

Accordingly, Ground Two does not warrant relief.

**Ground Three**

Petitioner complains that counsel was ineffective in failing to move for a judgment of acquittal or for a new trial on the carrying a concealed firearm charge on the ground that there was insufficient evidence establishing that the firearm he was carrying was concealed from the "ordinary sight" of Deputy Gaiser. Petitioner raised this claim in Ground Three of his Rule 3.850 motion (Respondent's Appx. B, Vol. I, Ex. 1 at record pages 74-75). In summarily denying the claim, the state post conviction court stated:

> In response to claim 3, that counsel was ineffective for failing to file a Motion for Judgment of Acquittal as to the carrying a concealed firearm charge "on sufficiency of the evidence grounds," the Court again finds Defendant's argument to be without legal merit. Specifically, Defendant argues that his counsel should have filed a Motion for Judgment of Acquittal to dismiss the carrying a concealed firearm charge because there was insufficient evidence presented that the firearm was not visible from the "ordinary sight" of the deputy.

> "The purpose of a motion for judgment of acquittal is to challenge the legal sufficiency of the evidence to support every element of the charged offense. Anderson v. State, 504 So.2d 1270, 1271 (Fla. 1st DCA 1986). When a defendant moves for judgment of acquittal, he admits all facts adduced in evidence and every conclusion favorable to the adverse party that a jury might reasonably and fairly infer from the evidence. Id., at 1271; Mitchell v. State, 493 So.2d 1058, 1060 (Fla. 1st DCA 1986)." -- Steele v. State, 561 So, 2d 638, 643 (Fla. 1st DCA 1990).

> Hence, based upon the testimony of Deputy Gaiser, the Defendant must admit that the deputy did not see the gun until it dropped to the ground during the foot pursuit, and every inference derived from such testimony must be inferred in favor of the non-moving party, the State in this case. See Deputy Gaiser's direct testimony at 40, lines 19-24; and the relevant excerpt from the State's closing argument at 143, lines 11-21, copies of which are attached.

> Based upon the above, there was sufficient evidence presented to easily survive a Motion for Judgment of Acquittal and submit the issue to the jury for its determination. Accordingly, counsel cannot be ineffective for failing to raise a meritless motion. Due to the foregoing, **claim 3 is DENIED**.

17

(Respondent's Appx. B, Vol. I, Ex. 6 at record pages 82-83) (emphasis in original).

In denying Petitioner's motion for reconsideration of the denial of the claim, the post conviction court stated:

> Defendant next argues the Court erred in summarily denying claim 3 of his *Motion for Post-Conviction Relief.* The Court first adopts and incorporates by reference its response to claim 3 as stated in its *Order on Defendant's Motion for Post-Conviction Relief and Order to Show Cause.* As to the claim that defense counsel was ineffective for failing to at least preserve the issue for appellate review, the Court finds that, even if counsel failed to preserve the issue by filing a posttrial motion, such is not fatal to the action. Specifically, sufficiency of the evidence, or "manifest weight of the evidence" is always available as a possible ground for direct appeal, regardless of whether such issue is expressly preserved in the trial court. See Rule 9.140, Fla. R. App. P. Accordingly, even if counsel failed to properly preserve the issue in the trial court by failing to file either a Motion for Judgment of Acquittal or a Motion for New Trial, such error did not create any prejudice to the Defendant.

> As to the remainder of the claim, at least as it relates to Defendant's claim that defense counsel was ineffective for failing to file a Motion for New Trial, the Court disagrees. "In deciding a motion for new trial pursuant to Florida Rule of Criminal Procedure 3.600(b) [sic] on the ground that the verdict is contrary to the weight of the evidence, the trial court acts as a "safety valve" by granting a new trial where the evidence is technically sufficient to prove the criminal charge but the weight of the evidence does not appear to support the jury verdict." State v. Brockman, 827 So. 2d 299, 304 (Fla. 1st DCA 2002). In the present case the Defendant argues, in relation to the carrying a concealed firearm charge, "The Officer's own testimony was that the suspect was fleeing and stumbled or dropped the gun. This is clearly not in line with the 'ordinary sight' as defined by law, which would require a casual and ordinary observation." *Motion for Reconsideration* at 5. The officer in this case testified that he attempted to stop the Defendant for a traffic infraction, but the Defendant accelerated down a driveway. *See* Tr. at 38, a copy of which is attached to the Court's previous Order. The Defendant then stopped his car, exited same, and took one or two steps toward the Officer. *Id*. At that time the Defendant (standing outside of his car) and the Officer (still sitting in his car) were approximately 20 feet from each other and looking at each other. *Id*. Defendant then turned and fled on foot. *Id*. at 39. During the ensuing foot pursuit, the Officer got as close as 5 or 6 feet to the Defendant, but then fell behind to approximately 15 feet. *Id*. While approximately 15 feet behind the Defendant, the Officer observed the Defendant reach "**underneath** his shirt around his waistband area. ... At that point ... a small black pistol dropped to the ground." *Id*. at 40, lines 19-24 (Emphasis supplied).

18

The Defendant also testified at trial but simply offered the defense that it was his brother driving the car and he had nothing to do with the incident. There was, based upon such defense, no question asked of him, either by the State or his own counsel, about where the gun was located or how it was carried and, hence, no express contradiction of the officer's testimony on the issue of whether the gun was concealed or not.

Based upon the evidence and testimony actually adduced at the trial, the Court finds there is simply no reasonable likelihood that the trial court would have found, even if a Motion for New Trial had been timely presented, that the "verdict was contrary to the weight of the evidence," or that the "weight of the evidence does not appear to support the jury verdict." Brockman, *supra*. As such, Defendant's claim fails the second prong of the *Strickland* analysis; i.e., the prejudice prong. Based on all of the above, **claim 1[sic] is again DENIED**.

(Respondent's Appx. B, Vol. I, Ex. 9 at record pages 165-67) (emphasis in original).

The state court has answered the question of what would have happened had defense counsel filed a motion for judgment of acquittal or motion for new trial - the motions would have been denied. Consequently, Petitioner has failed to establish deficient performance or prejudice.

Further, to the extent Petitioner argues that there was insufficient evidence to support the carrying a concealed weapon conviction, when reviewing an insufficiency of the evidence claim in a habeas petition, a federal court must determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). The court must assume that the jury resolved any evidentiary conflicts in favor of the prosecution, and the court must defer to that resolution. *Id*.; *Johnson v. Alabama*, 256 F.3d 1156, 1172 (11th Cir. 2001).

In Florida, "the crime of carrying a concealed firearm is complete upon proof that the defendant knowingly carried a firearm that was concealed from the ordinary sight of another person." *Mackey v. State*, 83 So. 3d 942, 946 (Fla. 3d DCA 2012). "'Ordinary sight' means 'the casual and

19

ordinary observation of another in the normal associations of life.'" *Davis v. State*, 761 So. 2d 1154, 1156 (Fla. 2d DCA 2000) (quoting *State v. Blanco*, 702 So. 2d 597, 598 (Fla. 2d DCA 1997)). "In the context of a charge of carrying a concealed firearm, the critical question is whether the firearm was carried on or about a person in such a manner as to conceal the firearm from the ordinary sight of another person. The critical issue is whether the firearm is concealed from the ordinary observation of others. . . ." *State v. Yarn*, 63 So. 3d 82, 85 (Fla. 2d DCA 2011) (internal citations and quotations omitted).

Deputy Gaiser testified in pertinent part that after Petitioner stopped his vehicle at approximately 4:00 p.m., he saw Petitioner exit the vehicle, and he observed Petitioner facing him (Respondent's Appx. A, Vol. II at record pages 113, 116). Petitioner then started running away, and Deputy Gaiser pursued him on foot (Id. at 117). As Deputy Gaiser was chasing Petitioner, he saw Petitioner spin around and reach underneath his shirt around his waistband, when a small black pistol dropped to the ground (Id. at 118). That was the first moment Deputy Gaiser saw the pistol (Id. at 124). Therefore, Deputy Gaiser observed Petitioner in the daylight, but did not see a gun when he saw Petitioner from the front after Petitioner exited his vehicle, or from the back when he was chasing closely behind Petitioner. Deputy Gaiser never learned that Petitioner was carrying a weapon until Petitioner reached underneath his shirt around his waistband, and a gun fell out onto the ground.[10]

Viewing the evidence in a light most favorable to the State, the Court finds that any rational trier of fact could have found that the gun Petitioner was carrying was concealed from the ordinary

---

[10]The Court notes that during trial, Petitioner never presented any evidence or argument showing that the gun was not concealed. Instead, Petitioner's theory of defense was that he was misidentified as the perpetrator.

sight of Deputy Gaiser. *See, e.g., State v. Walthour*, 876 So. 2d 594, 596 (Fla. 5th DCA 2004) (knife and box cutter hooked to defendant's belt and underneath his shirt "were concealed"). Therefore, Petitioner has failed to show that there was insufficient evidence to support the carrying a concealed firearm conviction.

Petitioner has failed to cite to any decision of the United States Supreme Court that would indicate the state court's decision was contrary to *Jackson* or an unreasonable application of *Strickland*, or demonstrate that the decision was based on an unreasonable determination of the facts. Accordingly, the Court finds that Petitioner has failed to show that he is entitled to federal habeas relief on Ground Three.

**Ground Four**

Petitioner asserts that counsel was ineffective in failing to either call Petitioner's brother, Manuel Martinez, to testify at trial, or present photographs of Manuel Martinez at trial to show the jury that Petitioner and Manuel Martinez were similar in appearance. Petitioner argues that in light of the fact that the vehicle he was allegedly driving at the time of the offense was registered to his brother, and that Deputy Gaiser had only a brief opportunity to observe the person exiting the vehicle, Petitioner's misidentification defense would have been strengthened had the jury seen his brother or photographs of his brother.

Petitioner raised this claim in Ground Four of his Rule 3.850 motion (Respondent's Appx. B, Vol. I, Ex. 1 at record pages 75-76). Following an evidentiary hearing, the state post conviction court denied the claim and stated:

> As to claim 4, Cox testified that it was his intent to locate Manuel Martinez and subpoena him to appear in Court for the trial, even if it was for the sole purpose of Manuel Martinez appearing and invoking the Fifth Amendment. Cox testified that

21

he wanted to get Manuel Martinez into Court in order for the jury to see the similarity in appearance of Alberto and Manuel Martinez. Cox attempted to locate Manuel through the Department of Corrections and through the Defendant's family.  Nobody could tell Cox where Manuel could be found and nobody knows where Manuel is to this day. Cox was never given any photos of Manuel prior to trial. In fact, at the evidentiary hearing, no relevant photographs of Manuel were presented to the Court that were taken before the trial date. Based on the above, **claim 4** is **DENIED**.

(Respondent's Appx. B, Vol. II, Ex. 2 at record page 300) (emphasis in original).

During the evidentiary hearing, Petitioner's trial counsel testified that prior to Petitioner's trial he attempted to locate Manuel Martinez (Respondent's Appx. B, Vol. II, Ex. 12 at record pages 248-49).  However, neither Petitioner, nor Petitioner's mother or sister knew where Manuel Martinez was located, and despite counsel's efforts to locate him via the internet, he was unable to do so (Id. at 249-50).  Neither Petitioner nor his family could afford to hire a private investigator to attempt to locate Manuel Martinez (Id. at 249).  Nor did Petitioner or his family give counsel a photograph of Manuel Martinez prior to trial (Id. at 251).  Although counsel could not specifically recall asking Petitioner's family to provide him with a photograph of Manuel Martinez, he assumed that he would have asked for a photograph of Manuel (Id. at 258).

Also during the evidentiary hearing, Petitioner testified that trial counsel could have obtained a photograph of Manuel Martinez "through [his] family." (Id. at 197).  However, when Petitioner's mother, Fabiana Martinez, was asked "Mrs. Martinez, did you have photographs of Manuel in your possession around the time of [Petitioner's] trial?" she answered "Not at the beginning, but after awhile we did have some pictures." (Id. at 213).  Fabiana Martinez identified two photographs - one of Petitioner, and one of Manuel Martinez (Id. at 213-16).  The photograph of Manuel Martinez, however, was taken in November 2006, after Petitioner's February 2005 trial and conviction (Id. at 214-16).

It is apparent from the testimony during the evidentiary hearing that Petitioner's trial counsel attempted to locate Manuel Martinez, but was unable to do so.  It is also apparent that neither Petitioner nor his family informed trial counsel where Manuel Martinez was located at the time of Petitioner's trial.  Therefore, there was no indication that Manuel Martinez was available to appear at Petitioner's trial.  Consequently, Petitioner failed to demonstrate deficient performance or prejudice.  *See Nelson v. State,* 875 So. 2d 579, 583 (Fla. 2004) ("If a witness would not have been available to testify at trial,  then the defendant will not be able to establish deficient performance or prejudice from counsel's failure to call, interview, or investigate that witness.") (footnote omitted); *Gorman v. State*, 738 So. 2d 966, 967 (Fla. 1st DCA 1999) (holding that no evidence was presented that a witness would have been available to testify at trial or that he would have testified in a manner favorable to the defense).  *See also Gideon v. Dep't of Corr.*, 295 Fed. Appx. 988, 990 (11th Cir. 2008) ("The [Florida court's] holding that Gideon could not show prejudice because he did not allege that [witness] was available to testify, was a reasonable application of federal law to the facts of the case.").  Accordingly, the state courts' rejection of Petitioner's claim that counsel was ineffective in failing to call Manuel Martinez to testify at trial was not objectively unreasonable.

With respect to Petitioner's claim that counsel was ineffective in failing to attempt to introduce a photograph of Manuel Martinez during trial, the testimony during the evidentiary hearing established that neither Petitioner nor his family provided trial counsel with a photograph of Manuel Martinez prior to trial. Neither Petitioner nor his mother or sister testified that they possessed a photograph of Manuel at the time of Petitioner's trial.  In fact, Petitioner's mother appeared to testify that she did not possess a photograph of Manuel at the time of Petitioner's trial.  The only photograph of Manuel that was presented during the evidentiary hearing was taken more than a year

after Petitioner's trial.  Although Petitioner testified that counsel could have obtained a photograph of Manuel Martinez for trial "through [his] family," Petitioner neither asserted that he had a photograph of Manuel, nor identified which family member possessed a photograph of Manuel at the time of Petitioner's trial.

There is no indication from the record that Petitioner's trial counsel could have obtained a photograph of Manuel Martinez prior to trial.  Petitioner's vague, speculative, and self-serving testimony that counsel could have obtained a photograph of Manuel through an unidentified family member is insufficient to support his ineffective assistance of counsel claim.  *See Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991) (vague, conclusory, speculative, or unsupported claims cannot support an ineffective assistance of counsel claim); *Barkauskas v. Lane*, 946 F.2d 1292, 1295 (7th Cir. 1991) (when alleging ineffective assistance of counsel, to show prejudice "the party must present evidence, not mere conclusory allegations, that counsel overlooked exculpatory testimony").[11]  Consequently, Petitioner failed to demonstrate deficient performance or prejudice. Therefore, the state courts' rejection of Petitioner's claim regarding counsel's failure to present a photograph of Manuel Martinez at trial was not objectively unreasonable.

Petitioner has not shown that the Florida courts' resolution of this ineffective assistance of counsel claim was contrary to or an unreasonable application of *Strickland*, or that the denial of relief was based on an unreasonable determination of the facts in light of the evidence presented during the state post conviction evidentiary hearing.  Accordingly, Ground Four does not warrant habeas

---

[11]Because Petitioner was given the opportunity to develop the factual basis of this ineffective assistance of counsel claim in state court, and because he does not show that this claim relies on a new rule of constitutional law, or a factual predicate that could not have been previously discovered through diligence, he is not entitled to an evidentiary hearing in this Court. See 28 U.S.C. § 2254(e)(2).

relief.

**Ground Five**

In Ground Five, Petitioner first contends that counsel was ineffective in failing to "investigate and secure" George Nerio as a witness for the defense.  Petitioner asserts that prior to trial, he informed counsel that Deputy Gaiser had questioned Nerio about the photograph that Deputy Gaiser found in Petitioner's car, which depicted Petitioner, Manuel Martinez, and several other people. Petitioner alleges that Nerio would have testified that Deputy Gaiser was unable to identify Petitioner in the photograph.

Petitioner next contends that he recently received affidavits from Devan Phillips, Kaleigh Kennedy, James Stewart, Caris Atchley, and Theresa Morin in which they essentially attested that Deputy Gaiser, while questioning them about the individuals in the photograph he found in Petitioner's car, pointed to Manuel Martinez in the photograph, but misidentified him as Petitioner. Petitioner essentially argues that had counsel hired a private investigator to conduct a proper investigation, he would have discovered these individuals, and they would have testified at his trial that Deputy Gaiser mistook Manuel Martinez for Petitioner in the photograph.

Petitioner raised the claim regarding Nerio in Ground Five of his Rule 3.850 motion (Respondent's Appx. B, Vol. I, Ex. 1 at record pages 77-78).  Petitioner raised the claim regarding Phillips, Kennedy, Stewart, Atchley, and Morin in his subsequently filed supplement to Ground Five (Respondent's Appx. B, Vol. I, Ex. 8 at record pages 150-62).  Following an evidentiary hearing, the state post conviction court denied the claims and stated:

> As to claim 5, the Defendant testified that he informed Cox of the availability of witnesses Stewart, Nerio, and Kennedy one month prior to trial, and that these witnesses would have proven that Deputy Geyser [sic] misidentified the Defendant

25

as the person who fled from him. The Defendant never mentioned these witnesses to his previous Public Defender. Kennedy testified that she sent an affidavit concerning the photograph she was shown by Deputy Geyser [sic] to the Defendant after he was sent to prison, after the trial concluded. Nerio initially testified that the first time he discussed the photograph that Deputy Geyser [sic] showed to him with the Defendant was after the Defendant lost at trial. When Nerio was questioned on redirect, Nerio changed his testimony and said that the Defendant was about to go to trial when he spoke to Defendant about the photograph. The Court finds that Nerio's initial statement that Defendant had already been to trial and lost is more credible. This statement supports Cox's testimony that the Defendant gave him the name of the three witnesses after trial but before sentencing. Cox addressed the issue of the new witnesses at sentencing. Deputy Geyser [sic] also testified that he identified Alberto Martinez as the person who fled from him.  Deputy Geyser [sic] testified that he identified Alberto Martinez in the photograph that he located in Manuel's car, and that the picture matched other photographs that he found of Alberto Martinez in a database that he searched.  Due to the overwhelming identification evidence presented by Deputy Geyser [sic], the Defendant cannot establish that he was prejudiced at trial by trial counsel not calling Nerio, Kennedy, or Stewart to testify. Based on the above, **claim 5** is **DENIED**.

(Respondent's Appx. B, Vol. II, Ex. 2 at record page 300) (emphasis in original).

First, to the extent that Petitioner is claiming that counsel was ineffective in failing to call these individuals to testify at trial, he does not show deficient performance because he does not show that counsel was aware of these witnesses prior to trial.  During the evidentiary hearing, counsel testified that after the trial concluded, Petitioner gave him a list of names of witnesses that he wanted called at trial, including Nerio's name (Respondent's Appx. B, Vol. II, Ex. 12 at record page 250). Counsel was not aware of these individuals until after the trial concluded (Id. at 260-63).  Petitioner testified that he informed counsel about Nerio prior to trial (Id. at 200, 206-08).  Petitioner, however, admitted that he never informed the public defender, who represented Petitioner before Petitioner retained private defense counsel, about Nerio (Id. at 208).  Petitioner also testified that he did not learn about the other witnesses until after trial (Id. at 200-01).  Further, in his supplement to Ground Five of his 3.850 motion, filed on January 7, 2007, Petitioner alleged that he had "recently received

affidavits from" Phillps, Kennedy, Stewart, Atchley, and Morin, and that they "were unknown to defendant at the time of trial" (Respondent's Appx. B, Vol. I, Ex. 8 at record pages 150-51).

Nerio initially testified that he had told Petitioner about Deputy Gaiser on February 29, 2005, after Petitioner's February 7, 2005 trial, while Petitioner and he were in jail together (Id. at 233-34). He also testified that Petitioner had told him that "he had lost trial." (Id. at 234). On redirect, Nerio changed his testimony and stated that Petitioner had said that "he was going to trial" or "going through trial" and that "he might lose it" or "was going to lose the trial." (Id. at 236-37). He also testified that it was possible he spoke to Petitioner earlier than February 29, 2005 (Id. at 235-36).

The state post conviction court found Nerio's initial testimony, that the first time he discussed Deputy Gaiser with Petitioner was after Petitioner's trial, was more credible than his subsequent testimony, that he had discussed the matter with Petitioner before the trial (Respondent's Appx. B, Vol. II, Ex. 2 at record page 300). The state post conviction court then found that Nerio's initial statement "supports Cox's testimony that the [Petitioner] gave him the name of the three witnesses after trial but before sentencing." (Id.). Therefore, the state post conviction court made an implicit factual finding that Petitioner did not give Nerio or the other witnesses' names to counsel until after trial.

Pursuant to 28 U.S.C. § 2254(e)(1), a determination of a factual issue made by a state court shall be presumed to be correct and the petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence. *Sneed v. Fla. Dep't of Corr.*, 2012 U.S. App. LEXIS 22862, *5-6 (11th Cir. Nov. 7, 2012) (unpublished) (citations omitted) ("To overcome the deference owed to state court factual determinations, a petitioner must present clear and convincing evidence that the state court's factual findings were unreasonable."). The federal courts are in accord with the

27

principle that the fact-finder's credibility determinations are not to be disturbed. Even where there is some conflict in the evidence, credibility determinations are within the province of the fact-finder. *See Anderson v. City of Bessemer City*, 470 U.S. 564, 575 (1985) (holding that special deference is due where a trial court's findings are based on the credibility of witnesses, "for only the trial judge can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding of and belief in what is said"); *Inwood Lab., Inc. v. Ives Lab., Inc.*, 456 U.S. 844, 856 (1982) (holding that "[d]etermining the weight and credibility of the evidence is the special province of the trier of fact"); *United States v. Pineiro*, 389 F.3d 1359, 1366 (11th Cir.2004) (holding that "[s]uch a credibility finding is within the province of the factfinder").

Here, the state post conviction court's credibility determination and implicit factual finding are supported in the record. Petitioner has not presented clear and convincing evidence that the state court's findings were unreasonable. Therefore, this Court concludes that counsel was not deficient in failing to call witnesses of whom he was unaware at the time of trial.

Second, to the extent Petitioner asserts that "[h]ad counsel properly investigated, i.e.[,] had an investigator go to the store in question and seek out possible witnesses, a different outcome is likely" (Dkt. 1 at docket page 17), he likewise fails to demonstrate deficient performance. "[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. . . . [A] particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Strickland*, 466 U.S. at 691. "Counsel has a duty to interview potential witnesses and make an independent examination of the facts, circumstances, pleadings and laws involved." *Rummel v. Estelle*, 590 F.2d 103, 104 (5th Cir. 1979) (internal quotations omitted).

28

"However, trial counsel's performance must be measured against what he knew or should have been expected to know at the time of his investigation." *Mikell v. Terry*, 2012 U.S. Dist. LEXIS 177404, *59-60 (N.D. Ga. Oct. 25, 2012) (citing *Rhode v. Hall*, 582 F.3d 1273, 1280 (11th Cir. 2009) ("We review counsel's performance from counsel's perspective at the time, to avoid the distorting effects of hindsight.") (citation and quotes omitted)).

In Petitioner's case, the record shows that counsel did not know about Nerio, Phillips, Kennedy, Stewart, Atchley, and Morin until after trial. Moreover, these individuals did not witness Deputy Gaiser's stop and pursuit of Petitioner. Instead, they allegedly were questioned by Deputy Gaiser, during his subsequent investigation of the matter, at a store in the same town where Deputy Gaiser had stopped and pursued Petitioner. There is nothing in the record which suggests that counsel should have suspected that Deputy Gaiser had questioned these or any other individuals, and misidentified Petitioner in a photograph while interviewing them. Moreover, even if counsel had hired a private investigator,[12] there is no indication from the record that the investigator would have known that Deputy Gaiser had gone to a particular store to question individuals about the photograph he found in Petitioner's car, or located the individuals Deputy Gaiser allegedly spoke to while at the store. Therefore, Petitioner's assertion that a private investigator would have discovered these or other potential witnesses is too speculative to sustain an ineffective assistance of counsel claim.

Finally, the state post conviction court's determination that in light of Deputy Gaiser's identification testimony, Petitioner failed to show he was prejudiced by counsel's failure to call these individuals as witnesses at trial, is neither an unreasonable application of *Strickland*, nor based on

---

[12]The Court again notes that during the state post conviction evidentiary hearing, counsel testified in pertinent part that the issue of hiring a private investigator was discussed with Petitioner, but Petitioner and his family were not able to pay for an investigator (Respondent's Appx. B, Vol. II, Ex. 12 at record page 249).

an unreasonable determination of the facts.   During trial, Deputy Gaiser testified that he saw

Petitioner's face when he exited his vehicle (Respondent's Appx. A, Vol. II at record page 116).   He

then found a photograph in Petitioner's vehicle, and he recognized Petitioner in the photograph (Id.

at 120).   During his subsequent investigation, Deputy Gaiser discovered a booking photograph of

Petitioner from jail records, and identified Petitioner from that photograph as the person he saw

exiting the vehicle (Id. at 123; Respondent's Appx. B, Vol. II, Ex. 12 at record pages 271-72).

Further, during the state post conviction evidentiary hearing, Deputy Gaiser testified that a witness

to his stop and pursuit of Petitioner identified the person exiting the vehicle as "Skinny," and that

Petitioner's mother and sister subsequently confirmed that Petitioner's nickname was "Skinny."

(Respondent's Appx. B, Vol. II, Ex. 12 at record pages 269-71).   Deputy Gaiser also testified that

he showed Petitioner's mother and sister the photograph he had found in the vehicle, and they

confirmed that the man Deputy Gaiser saw exiting the vehicle, who was also in the photograph, was

Petitioner (Id. at 271).

This Court concludes that in light of the strength of Deputy Gaiser's testimony, Nerio,

Phillps, Kennedy, Stewart, Atchley, and Morin's proffered testimony does not raise a reasonable

probability that the outcome of the trial would have been different.[13]   Therefore, the state court was

---

[13]The Court notes that post-trial, self-serving affidavits, such as those relied upon here by Petitioner, are generally viewed as suspect.  *See Arthur v. Allen*, 452 F.3d 1234, 1246 (11th Cir. 2006) ("[E]xclupatory affidavits 'produced . . . at the 11th hour with no reasonable explanation for the nearly decade-long delay' are 'suspect.'") (quoting *Herrera v. Collins*, 506 U.S. 390, 423 (1993) (O'Connor, J., concurring)).  Here, the affidavits are highly suspect because all the affiants knew Petitioner or his brother (see Respondent's Appx. B, Vol. II, Ex. 12 at record pages 221-43; Respondent's Appx. B, Vol. I, Ex. 8 at record pages 154-62), the affidavits were not presented to the state court until nearly two years after Petitioner's trial, and more than two years after Deputy Gaiser allegedly interviewed them in June 2004 (Respondent's Appx. B, Vol. I, Ex. 8 at record pages 154-62) [Morin's affidavit was prepared on October 19, 2006] (Id. at 162), and, although hand-written and signed by five different individuals, the five affidavits are nearly identical in content and phrasing (Id. at 154-62).

not objectively unreasonable in finding no prejudice arose from trial counsel failing to call these witnesses at trial.

Petitioner has not shown that the state courts' resolution of this claim was an unreasonable application of *Strickland*, or that the denial of relief was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.  Accordingly, Petitioner is not entitled to habeas relief on Ground Five.

**Conclusion**

For the foregoing reasons, the Court finds that Petitioner is not entitled to federal habeas relief.

ACCORDINGLY, it is **ORDERED** that:

1. The Petition for Writ of Habeas Corpus is **DENIED**  (Dkt. 1).

2. The **Clerk** shall enter judgment against Petitioner, terminate all pending motions, and close this case.

**CERTIFICATE OF APPEALABILITY AND LEAVE TO APPEAL IN FORMA PAUPERIS DENIED**

**IT IS FURTHER ORDERED** that Petitioner is not entitled to a certificate of appealability. A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1).  Rather, a district court must first issue a certificate of appealability (COA).  Id.  "A [COA] may issue...only if the applicant has made a substantial showing of the denial of a constitutional right." Id. at § 2253(c)(2).  To make such a showing, Petitioner must show that reasonable jurists would find debatable both (1) the merits of the underlying claims and (2) the procedural issues he seeks to raise. See 28 U.S.C. § 2253(c)(2); *Slack*

*v. McDaniel*, 529 U.S. 473, 478 (2000); *Eagle v. Linahan*, 279 F.3d 926, 935 (11th Cir 2001).

Petitioner cannot make the requisite showing in these circumstances.

Finally, because Petitioner is not entitled to a COA, he is not entitled to appeal *in forma pauperis*.

**DONE and ORDERED** in Tampa, Florida, on _JANUARY 17th_____, 2013.

_____
JAMES D. WHITTEMORE
United States District Judge

SA:sfc
Copy to: Petitioner *pro se*
            Counsel of Record

32